BRANDENBURG *v.* BUCHTA ET AL.

[No. 29,155. Filed February 26, 1954. Rehearing denied April 1, 1954.]

*James M. Dawson* and *L. Russell Newgent,* of Indianapolis, for appellant.

*Fenton, Steers, Beasley & Klee,* of Indianapolis, for appellee.

DRAPER, C. J.—The appellant Brandenburg was the plaintiff below. He brought this action against Fields and Buchta to recover for personal injuries and prop-

erty damage sustained in a collision which occurred on State Road 67 near Mooresville, Indiana.

Fields defaulted. At the close of plaintiff's case the trial court directed a verdict in favor of Buchta, and the plaintiff, Brandenburg, appeals.

The sole question presented is whether the court erred in directing a verdict in favor of Buchta. For the reasons hereafter stated we hold that the court did err in so doing.

The record shows without dispute that Buchta was the owner of the semitrailer which collided with Brandenburg's dump truck and that the semitrailer was being drawn at the time by a Dodge tractor owned and operated by Fields. Fields had no authority or permit from the Public Service Commission to operate vehicles either as a common or contract carrier. Buchta was duly licensed and authorized as a common carrier of property intrastate by the Public Service Commission of Indiana. It further appears that at the time of the collision Fields was on his way to pick up and deliver a load of sewer tile, which is one of the commodities that Buchta was authorized to transport.

It is conceded that Brandenburg's injuries were caused by the negligence of Fields. The verdict was directed on the theory that the evidence did not disclose such a relationship between Fields and Buchta as would impose liability upon Buchta.

A semitrailer used upon any public highway of this state for the purpose of transporting property is defined by statute as a "motor vehicle," Burns' 1952 Repl., §47-1212. The operation of a motor vehicle over the highways of this state for hire, without a certificate or permission of the Public Service Commission so to do is forbidden by statute, Burns' 1952 Repl., §47-1232, and it is further unlawful for one to

authorize or knowingly permit a motor vehicle owned by him to be driven by one who has no legal right to do so. Burns' 1952 Repl., §47-2906.

As above stated, no authority or permit to operate either as a contract or common carrier has ever been issued to Fields, and unless it be presumed that Fields was operating the equipment in violation of the law and that Buchta had authorized or knowingly permitted him to do so, neither of which presumptions are permissible, 20 Am. Jur., §226, p. 221, it would seem to follow, in the normal course of events, that Fields could only have been operating the semi-trailer under a legally permissible arrangment of some kind with Buchta, who did hold a permit.

In *Bates Motor Transport Lines, Inc.* v. *Mayer, Admx.* (1938), 213 Ind. 664, 14 N. E. 2d 91, as in this case, the appellant was a licensed common carrier but did not own the equipment involved in the accident. This court there pointed out the relative unimportance of the fact that the operator of the equipment, who held no permit as a carrier, was the owner of it, and indicated that the question of liability depended upon the identity of the holder of the permit from the Public Service Commission—the common carrier under whose permit the equipment was being operated—and the court there noted that under the circumstances of that case, which in many respects is not unlike this one, the operator of the motor equipment could only have been acting as the agent or employee of the carrier.

Our law is intended, among other things, to make the highways safe for the general public and to prevent the unsafe and irresponsible operation of commercial motor vehicles to the detriment of the general welfare. Burns' 1952 Repl., §47-1214. Buchta admitted by his answer that he owned the semi-trailer and that it was being pulled by Fields at

the time of the accident. Buchta held a certificate to operate the semitrailer as a common carrier intrastate. He furnished insurance for the protection of other parties against loss or damage resulting from the negligent operation of the equipment. He had the right to operate the equipment on the public highways himself, or by and through his servants and employees. He was not authorized to loan it, contract it out or otherwise permit it to be driven by an unauthorized person, and he could not escape liability by so doing. It seems to us that when this equipment was found operating upon the highway under the attendant circumstances, the inference might well be drawn that it was being operated under Buchta's certificate, for his benefit, and by one whom he had lawfully authorized to use it.

We do not believe that one injured by the operation of such equipment under these circumstances should be required, as a condition precedent to recovery, to unravel and demonstrate the precise arrangement which exists between the operator of the equipment and the carrier. The ramifications of such relationships, which often appear to be mere subterfuges to evade the law, are frequently complicated and involved and may well operate, whether so intended or not, to make proof most difficult, if not impossible. Such information is peculiarly within the knowledge of the carrier and if in fact the equipment has been operated without his authority or under circumstances which relieve him of liability, we think he should be required to go forward with proof of those facts after the ownership of the equipment and its use in apparent connection with his business has been established.

Equipment of the kind involved in this case is generally used by or on behalf of the owner or lessee thereof

for business purposes. It has been suggested in this case that the plaintiff's proof does not eliminate the possibility that Fields may have stolen the equipment, or that he might somehow have been using it without Buchta's knowledge and consent. If such is the case, proof of those facts should be adduced by Buchta. The plaintiff cannot justly be required to establish the negative of those propositions. We think the case should have been submitted to the jury.

Judgment reversed and cause remanded for further proceedings in accordance with the views here expressed.

NOTE.—Reported in 117 N. E. 2d 643.