**David A. WILLIS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 64A03–8604–CR–101.**

Court of Appeals of Indiana, Third District.

Sept. 8, 1987.

Rehearing Denied Oct. 14, 1987.

---

**1.** (A) Loss of use damages for thirty (30) days at Twenty Dollars ($20) a day ........................................................ $ 600

(B) Loss of value of vehicle .................. $ 600

See also, 492 N.E.2d 45.

1. Whether the trial court committed reversible error when it imposed the presumptive sentence of two (2) years for a class D felony.
2. Whether the trial court committed reversible error when it did not grant a mistrial.
3. Whether the trial court committed reversible error when it allowed into evidence testimony regarding a prior offense committed by the defendant.
4. Whether the trial court committed reversible error when it allowed into evidence testimony regarding an attorney's utilization of trust accounts and general accounts.
5. Whether the defendant was denied a fair trial because law books and periodicals were located in areas accessible to the jury.
6. Whether the trial judge committed reversible error when he refused to recuse himself.

We affirm.

In August, 1981, David Willis was employed by Carol Durkin (Carol) to represent her three (3) children in litigation over her former deceased husband's life insurance proceeds. As a result of that litigation, on November 19, 1984, checks were issued to Carol's children, Steven and Lydia,[1] in the amount of fourteen thousand eight hundred eighteen dollars and forty-six cents ($14,818.46) each and mailed to Willis for distribution. Willis also received a check for attorney's fees in the amount of four thousand five hundred twenty-seven dollars and eighty-six cents ($4,527.86).

On November 30, 1984, Willis printed Steve's name, as well as his own, on the check payable to Steve and deposited it into his trust account.[2] Also on November 30, 1984, Willis transferred eight hundred eleven dollars and fifty-four cents ($811.54) from his general account into his trust account, making a total deposit of fifteen thousand six hundred thirty dollars ($15,630.00) into his trust account that day.[3]

Lowell E. Enslen, Gary K. Matthews, Enslen, Enslen & Matthews, Hammond, Christopher Kirages, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

David A. Willis appeals his conviction for theft, a class D felony, and the determinate prison term of two (2) years. This appeal raises six issues:

1. The disposition of the claims of the other child is not relevant to this case.

2. The check issued to Steve is the only one relevant to this case.

3. Prior to the November 30 deposit, Willis' trust account was overdrawn in the amount of fifteen dollars and thirty-nine cents ($15.39).

On December 1, 1984, Willis wrote a check, from his trust account, payable to the Chesterton State Bank in the amount of fifteen thousand five hundred ninety-four dollars and sixteen cents ($15,594.16). This check was delivered pursuant to a plea agreement entered into between Willis and the State on August 31, 1984. The plea agreement arose from a check deception charge filed against Willis on March 30, 1984. Under the agreement, the check deception charge would be dismissed if Willis made restitution within ninety (90) days, otherwise, he would be convicted of check deception and would be imprisoned for thirty (30) days.

Willis had never reached Carol or Steve to let them know the lawsuit had been settled and that he had the checks. However, Steve found out and appeared in Willis' office on February 18, 1985 to get his check. Willis wrote a check to Steve from his trust account for the sum of fourteen thousand eight hundred eighteen dollars and forty-six cents ($14,818.46). After Steve deposited the check, it was returned to him due to insufficient funds. On April 8, 1985, after Steve had sent a letter to Willis demanding payment, Steve received a cashier's check for fifteen thousand five hundred dollars ($15,500.00).

## I. Sentence

The first issue Willis raises is: after finding no mitigating circumstances and considering Willis's status as a former attorney, did the trial court commit reversible error by imposing a presumptive sentence of two (2) years? [4]

The Indiana Rules for the Appellate Review of Sentences Rule 2 provides:

(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the *character of the offender.*

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense *and offender* for which such sentence was imposed. (Emphasis supplied.)

*Fointno v. State* (1986), Ind., 487 N.E.2d 140, 144. Willis contends that the sentence of two (2) years for him is manifestly unreasonable because the trial judge failed to consider mitigating circumstances. However, at the sentencing hearing, the trial judge specifically found that there were no mitigating circumstances. A finding of mitigating factors is made within the discretion of the trial court. *Stark v. State* (1986), Ind., 489 N.E.2d 43, 48. When a defendant argues mitigating circumstances to a trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254.

Willis also contends the sentence is manifestly unreasonable because the trial judge considered his status as a former attorney [5] when determining the sentence. In *Hiller v. State* (1980), Ind.App., 412 N.E.2d 293, 294, this court affirmed an aggravated sentence where the trial judge found as an aggravating factor that the defendant was an attorney in a fiduciary position of trust and was an Officer of the Court. It would make no sense to say that the trial judge may consider the defendant's status as an attorney when enhancing the sentence but not when imposing the presumptive sentence.

We are unable to conclude that the sentence of two (2) years is manifestly unreasonable in light of the nature of the offense and the character of the offender.

## II.

### Prosecutorial Misconduct

Willis next raises the issue whether the trial court commits reversible error when it

---

**4.** IC 35–50–2–7(a) (Burns Repl.1985):
  A person who commits a class D felony shall be imprisoned for a fixed term of two [2] years, with not more than two [2] years added for aggravating circumstances or not more than one year subtracted for mitigating circumstanc-

es; in addition, he may be fined not more than ten thousand dollars [$10,000].

**5.** Willis resigned from the Indiana Bar on January 20, 1986.

does not grant a mistrial or give an immediate curative instruction when the prosecutrix allegedly misstates the law during *voir dire* examination?

During *voir dire*, the prosecutrix posed the following hypothetical:

PROSECUTRIX: Mr. DeMerse, if I was to tell you that the law in the State of Indiana and the law that will be instructed to you by the Judge is that in order to commit the offense of theft, you need not permanently deprive a person of their property. As an example, if I take your car and keep it for six months, five months, and I do it without your authorization and consent, but I give it back to you after six months, I am still guilty of theft. Do you think that is unfair at all?

&ast; &ast; &ast; &ast; &ast; &ast;

I take your car without your consent, without your authorization. I use it for five to six months, drive around with your car. At the end of five or six months, I give the car back to you, say, "Here you go." If I were to tell you that that is theft by Indiana statute and that is what the Judge is going to instruct you, would you follow that?

JUROR DEMERSE: Sure.

PROSECUTRIX: Does it make a difference to you if you didn't know that your car was stolen?

&ast; &ast; &ast; &ast; &ast; &ast;

Suppose I was your attorney and you got a car as a part of a settlement in a case and I got the car. I didn't tell you that the settlement had happened and I drove the car around for five to six months and at the end of five to six months, I gave you the car. You didn't give me your authority or permission for me to drive that car. Does that make a difference to you?

JUROR DEMERSE: Sure.

Willis alleges that because the hypothetical failed to include intent as an element of theft, the prosecutrix misstated the law. Willis moved for a mistrial and upon denial of the motion requested a curative instruction. This request was also denied.

■ Denial of a motion for mistrial is reviewable only for an abuse of discretion. *Ramos v. State* (1982), Ind., 433 N.E.2d 757, 759. A mistrial should be granted only where the defendant has been placed in a position of grave peril to which he should not have been subjected. *Hill v. State* (1986), Ind., 497 N.E.2d 1061, 1065. Ordinarily, if the jury is admonished, or *if other reasonable curative measures are taken,* no reversible error will be found. *Ramos, supra,* at 759. (Emphasis supplied.)

■ In this case, the trial judge did not grant a motion or give an immediate curative instruction upon request. The trial judge determined that the combination of the preliminary and final instructions to the jury would solve the problem and that there was "no need to highlight it with an additional instruction." (R. 221). Deference is accorded the trial judge who is in a more advantageous position than the appellate court to gauge accurately the surrounding circumstances of the event and its probable impact on the jury. *Hill, supra,* at 1067.

We cannot conclude that the judge did not take reasonable curative measures when he instructed the jury on all elements of the offense; what counsel says is not evidence, and the law comes only from the judge. Thus, no reversible error was committed when the trial judge denied the motion for mistrial.

### III.

### *Prior Offenses*

Willis contends that the trial court committed reversible error when it allowed into evidence testimony regarding a prior check deception charge and testimony regarding Indiana Supreme Court Disciplinary Complaints filed against him.

■ We need not consider whether testimony regarding the Disciplinary Proceedings was erroneously admitted because Willis has waived that challenge. An appellant has the obligation to make the proper specific objection and to preserve the

record for appeal. *Von Almen v. State* (1986), Ind., 496 N.E.2d 55, 57. The record shows that the first reference to the Disciplinary Complaint was made during cross-examination by the defense of a state's witness. The record shows no motion to strike the response referring to the Complaint.

Subsequently, during direct examination by the State of its witness, reference was again made to the Disciplinary Complaint. The record shows no objection by the defense to questions concerning the Complaint. Thus, Willis waived any challenge he may have had. Furthermore, the defense itself brought up the matter on the direct examination of the defendant.

■ Willis also contends that evidence regarding a prior check deception charge was erroneously admitted because it was irrelevant and highly prejudicial. Generally, evidence of prior offenses is not admissible to prove a defendant's propensity to commit a crime or to prove his guilt of the crime charged. *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345. However, such evidence may be admissible if probative on the question of motive or intent, particularly where the prior activity is related to the charged crime. *Hobbs v. State* (1984), Ind., 466 N.E.2d 729, 733. The admission of evidence having some tendency to render an inference of motive is made within the discretion of the trial court. *Drummond v. State* (1984), Ind., 467 N.E. 2d 742, 747. The trial judge admitted the evidence in this case after determining that the check deception charge was relevant to the issues of motive and intent because the theft Willis was charged with occurred to satisfy the plea agreement arising from the check deception charge. We will not undermine the trial court's discretionary determination that the testimony was admissible.

## IV.

### *Expert Testimony*

Willis next contends that the trial court committed reversible error when it allowed into evidence testimony regarding an attorney's utilization of trust accounts and general accounts. Willis argues that the State's witness was not qualified to testify about the accounts because the witness admitted that he did not have experience handling litigation accounts. However, the witness did testify that he is an attorney and a partner in a law firm that has both general and trust accounts. He further testified that he has attended seminars concerning trust responsibilities and has taught seminars concerning trusts and estates. Willis draws a distinction between trust accounts in general and litigation trust accounts to argue that the witness was not qualified.

■ An expert may be qualified by practical experience as well as by formal training and whether he is qualified as an expert is a matter within the sound discretion of the trial court. *Hare v. State* (1984), Ind., 467 N.E.2d 7, 19. The State's witness testified that he was familiar with general accounts and trust accounts. The extent of the witness's knowledge does not necessarily determine his competency as an expert but goes to the weight of his testimony to be determined by the jury. *Lineback v. State* (1973), 260 Ind. 503, 296 N.E.2d 788, 792. The trial judge did not abuse his discretion in finding the witness qualified to testify as an expert.

## V.

### *Juror Access to Law Books*

Willis next contends that he was denied a fair trial because law books and periodicals were left in areas accessible to the jury. The record shows that law books were shelved in a room through which jurors had to pass to reach the jury room. In addition, non-legal periodicals were located in the jury room.

Although in the trial of criminal causes in Indiana the jury are the judges of the law as well as the facts, this does not take away from the court the right to advise the jury as to the applicable law. *Posey v. State* (1956), 234 Ind. 696, 131 N.E.2d 145, 147. For this reason reversible error has been found when juries have referred to

law books during their deliberations. *E.g. Newkirk v. State* (1866), 27 Ind. 1; *Jones v. State* (1883), 89 Ind. 82. In both of these cases, reversible error was found because the juries were influenced by material that would not have been admissible during the trial.

In contrast to these cases are cases where the juries have access to law books during deliberations, but no reversible error is found because the jury was influenced by materials such as annotated statutes that merely reiterated what the jury would have been informed of through instructions. *E.g. Mulread v. State* (1886), Ind., 7 N.E. 884; *McClanahan v. State* (1954), 233 Ind. 365, 118 N.E.2d 734; *Posey, supra.*

In the case before us, there is evidence that the jury had access to law books and non-legal periodicals during deliberations. However, Willis has introduced no evidence that the jury was aware of the law books, used the law books, or were influenced in their deliberations by the law books or the periodicals. Thus, there is no indication that the court's right to advise the jury as to the applicable law has been usurped, and there is no evidence that Willis has been prejudiced. Consequently, the error was harmless.

## VI.

### *Motion for Recusation*

Willis next contends that the trial judge committed reversible error when he refused to recuse himself after publicly commenting on an allegation in the Motion to Correct Errors.

The record shows that after the Motion to Correct Errors was filed, a newspaper reporter asked the trial judge about an allegation that the trial judge had spoken with Willis about law books in the jury room some two (2) years prior to Willis' trial. The trial judge replied that he had never had the conversation with Willis and that, as to the law books, the door to the room containing the law books would have been closed during deliberations. This exchange was published in a local paper.

Willis also contends that the trial judge should have disqualified himself because he engaged in *ex parte* communications with counsel before ruling on the Motion to Correct Errors. The record shows that it was the defense counsel who the judge was talking with so Willis may not now complain on appeal. *Maneikis v. State* (1980), Ind.App., 411 N.E.2d 669, 699.

The law presumes that a judge is unbiased and unprejudiced in the matters which come before him. Where the judge has actual prejudice in a case, justice requires that the judge disqualify himself. However, the record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been disqualified. *Smith v. State* (1985), Ind., 477 N.E.2d 857, 864. Willis contends that because the judge violated the Canons of Judicial Conduct[6] he should have disqualified himself for bias and prejudice against Willis. This argument must fail.

We need not decide if the trial judge violated the Canons to reach this conclusion. Assuming, *arguendo*, that they were violated, Willis has still failed to prove actual bias or prejudice against him as to deprive him of the right to be tried before an impartial judge. This is so pri-

**6.** Code of Judicial Conduct, Canons 3A(4), 3A(6):

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the sub-

stance of the advice, and affords the parties reasonable opportunity to respond.

(6) A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

878

marily because the remarks by the trial judge were made *after* Willis had been convicted and sentenced. *Yager v. State* (1982), Ind., 437 N.E.2d 454, 462.

Furthermore, the remarks made by the trial judge concerned an allegation that bore no material relevance to an issue raised in the Motion to Correct Errors. Whether or not the trial judge and Willis had a conversation concerning the law books in the jury room two (2) years prior to trial is irrelevant to the issue of whether the jury in Willis' trial had access to law books. Thus, even if the trial judge had committed error, the error would have been harmless.

Affirmed.

GARRARD, P.J., concurs in result.

BUCHANAN, J., concurs.