**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEY FOR APPELLEE:

**BENJAMIN D. ICE**
**WILLIAM A. RAMSEY**
Murphy Ice & Koeneman, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALLEN R. STOUT, et al., | ) |
| | ) |
| Appellants-Defendants, | ) |
| | ) |
| vs. | )     No. 92A03-1105-CT-203 |
| | ) |
| LINDA ZABONA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-0909-CT-607

**April 9, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Allen Stout appeals the jury's verdict and award of damages in favor of Linda Zabona on her complaint for breach of contract, breach of fiduciary duty, conversion, and tortious interference with a business relationship against Stout, Christopher Wheeler, Stout, Wheeler & Zabona, LLP, and Stout & Wheeler, P.C. (collectively, "the Defendants"). Stout also appeals the jury's verdict against the Defendants on their counterclaim for breach of contract and breach of fiduciary duty. We affirm.

**Issues**

Stout raises seven issues, which we reorder, consolidate, and restate as:

I. whether public policy prohibits Zabona's recovery of damages;

II. whether Zabona forfeited her right to recover;

III. whether the jury was properly instructed;

IV. whether the damages award was proper; and

V. whether the jury's verdict on the Defendants' counterclaim is contrary to law.

**Facts**

Linda Zabona began working for Stout as a paralegal in 1995. In 1997, Zabona went to law school and, after graduating, worked with Stout as an associate attorney. At some point, Stout and Wheeler formed a partnership and, on December 24, 2003, Stout, Wheeler, and Zabona executed a limited liability partnership agreement forming a partnership named Stout, Wheeler & Zabona, LLP ("the Firm"). At some point, Zabona became the managing partner of the Firm.

2

On June 27, 2007, Stout and Wheeler presented Zabona with a "Notice of Partnership Liquidation," which immediately terminated the partnership. Pl. Ex. 2. Stout and Wheeler permitted Zabona to remove only a few personal items before requiring her to leave the office. Eventually Zabona received client files and some final monetary payments, and Stout and Wheeler formed a new partnership called Stout & Wheeler, PC.

On March 14, 2008, Zabona filed a complaint against Stout, Wheeler, Stout, Wheeler & Zabona, LLP, and Stout & Wheeler, PC. In April 2009, she filed an amended complaint alleging, among other things, breach of contract, breach of fiduciary duty, conversion, and tortious interference with a business relationship. The Defendants counterclaimed alleging that Zabona had embezzled, converted, or otherwise misappropriated funds in breach of the terms of the partnership agreement and in breach of her fiduciary duties. A jury found in favor of Zabona and against the Defendants on Zabona's complaint and awarded Zabona $98,000 in damages. The jury found against the Defendants on their counterclaim. Stout now appeals.[1]

## Analysis

### I. Public Policy

Stout argues that Zabona is not entitled to recover because she improperly billed for her paralegal's time, she assisted her paralegal in the unlicensed practice of law, and she improperly shared fees with a non-lawyer. According to Stout, Zabona violated law and public policy, and the verdict improperly rewards her for such violations. Zabona

---

[1] Stout appeals in his individual capacity. Based on our holding today, we need not address Zabona's request that we affirm the judgment against Stout, Wheeler, & Zabona, LLP, and Stout & Wheeler, LLP, regardless of our decision on Stout's appeal.

3

argues that, because the Defendants did not make this argument to the trial court, Stout is barred from raising it on appeal. Indeed, "[a] party may not raise an issue for the first time in a motion to correct error or on appeal." Troxel v. Troxel, 737 N.E.2d 745, 752 (Ind. 2000).

However, as Stout points out, our supreme court has noted:

> The rule that parties will be held to trial court theories by the appellate tribunal does not mean that no new position may be taken, or that new arguments may not be adduced; all it means is that substantive questions independent in character and not within the issues or not presented to the trial court shall not be first made on appeal. Questions within the issues and before the trial court are before the appellate court, and new arguments and authorities may with strict propriety be brought forward.

Wagner v. Yates, 912 N.E.2d 805, 812 n.1 (Ind. 2009). Citing Wheeler's trial testimony that he had ethical concerns about Zabona's purported billing practices, that from his perspective Zabona was fee sharing, and that Zabona's paralegal was doing work outside of Zabona's purview, Stout asserts that the issue of the impropriety of recovering improperly charged fees was raised at trial.

We disagree. Whether an award of damages to Zabona is contrary to public policy is a substantive question independent in character from the Defendants' trial arguments and is not properly raised for the first time on appeal. Although there is evidence of Wheeler's concerns, the Defendants did not pursue this theory as an affirmative defense, it was not addressed in the pre-trial order, and the jury was not instructed on it. This

4

issue is waived.[2]  See McGill v. Ling, 801 N.E.2d 678, 688 (Ind. Ct. App. 2004) (concluding that an issue was waived because, "[i]f we were to adopt McGill's assertion that a party does not waive a new argument raised for the first time on appeal simply because there are facts in the summary judgment record to support that argument, that would create an exception which swallows the waiver rule."), trans. denied.

## II.  Forfeiture

Stout argues that, because of Zabona's allegedly illegal and unethical conduct and because Zabona used her Firm credit card for personal charges, for gas for Firm employees, and for a dryer for her paralegal, she has "been guilty of fraudulent actions and has unclean hands . . . ." Appellant's Br. p. 16.  Stout claims that Zabona's actions were so egregious that she should be held to have forfeited any and all interest in the partnership.  In response, Zabona argues that this issue is waived because it was not raised as an affirmative defense, it was not addressed in the pre-trial order, and the jury was not instructed on it.  Without any argument by Stout establishing that this issue has not been waived, we must agree with Zabona that Stout may not pursue this theory of unclean hands, fraud, and forfeiture for the first time on appeal.  See Troxel, 737 N.E.2d at 752.

## III.  Jury Instructions

---

[2]  Zabona also asserts that, because she was not criminally charged by the State and was not charged by the disciplinary commission, the entities responsible for enforcing these laws, Stout's arguments are misplaced. Zabona submitted evidence supporting these assertions in her appendix.  Stout filed a motion to strike Zabona's appendix on the grounds that this evidence was not submitted to the trial court and is outside of the record on appeal.  Because of our conclusion that this issue is waived, we need not address the merits of Zabona's argument.  Although the information in Zabona's appendix is not relevant to our resolution of the appeal, we deny Stout's motion to strike in a separate order.

5

Stout argues that the jury was improperly instructed. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. Cavens v. Zaberdac, 849 N.E.2d 526, 533 (Ind. 2006). If the challenge to a jury instruction is that it does not correctly state the law, we will review the instruction de novo. Id. If the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will only reverse if the trial court has abused its discretion. Id.

### A. Adverse Inference Instruction

Stout argues that the trial court improperly gave the following instruction:

> If a party fails to testify about facts, produce a witness or produce documents under the party's exclusive knowledge and control, you may conclude that the testimony the witness could have given or documents the witness could have produced would have been unfavorable to the party's case.

App. p. 150. This instruction was based at least in part on a letter sent from the Defendants to the Firm's accountant, Randy Fry. The letter stated in part:

> I am informed that her attorney Benjamin D. Ice caused a Third Party Motion to Produce to be directed to you along with a Subpoena Duces Tecum, a copy of which I enclose for your review.
>
> That Third Party Motion to Produce requests that you provide certain bank records of Stout, Wheeler & Zabona, LLP and/or Stout & Wheeler, LLP to Attorney Zabona or her Attorney Benjamin Ice.
>
> This letter is to inform you that Allen R. Stout and Christopher J. Wheeler d/b/a Stout and Wheeler, LLP do **NOT** authorize the release of any of these materials requested

6

by Linda Zabona's attorney. We request that you either seek a protective order through your various legal representatives or decline a response to the Motion to Produce to a Non-Party.

Pl. Ex. 13.

At trial the Defendants objected to this instruction on the basis that there was no showing of exclusivity.[3] As Zabona points out, according to Indiana Code Section 25-2.1-14-2, which relates to accounting professionals, "information derived from or as the result of professional services is confidential and privileged." Further, in referring to a former version of this statute, we have observed, "[t]he privilege is personal to the client rather than to the accountant." Landau v. Bailey, 629 N.E.2d 264, 267 (Ind. Ct. App. 1994). Based on the language of the letter, it is clear that even the Defendants believed they had the authority to control the disclosure of the information. Accordingly, it was within the trial court's discretion to conclude that under these circumstances the information was under the Defendants' exclusive control. Stout has not established that the trial court abused its discretion in giving this instruction.

### B. Interference with a Contractual Relationship Instruction

---

[3] On appeal, Stout argues that Zabona could have used the Indiana Trial Rules to compel the production of the documents and that Zabona could have served a subpoena duces tecum on the accountant and had him bring the requested documents with him to the trial. Indiana Trial Rule 51(C) provides, "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Further, "'[a]ny error regarding an instruction is waived where grounds asserted on appeal differ from those stated in objections at trial.'" Swan Lake Holdings, LLC v. Hiles, 888 N.E.2d 265, 272-73 (Ind. Ct. App. 2008). Thus, our review of this instruction is limited to the objection raised at trial.

Stout argues that the trial court improperly instructed the jury regarding tortious interference with a contractual relationship instead of tortious interference with a business relationship.[4] Court's Final Instruction No. 10 provided:

> Linda Zabona has made a claim that Allen Stout and Christopher Wheeler wrongfully interfered with her contractual relations.
>
> To recover damages for wrongful interference with contractual relations, Linda Zabona must prove by the greater weight of the evidence that:
>
> > (1)   A valid and enforceable contract existed between Linda Zabona and Allen Stout and Christopher Wheeler;
> >
> > (2)   Allen Stout and Christopher Wheeler knew the contract existed;
> >
> > (3)   Allen Stout and Christopher Wheeler intentionally caused a breach of the contract;
> >
> > (4)   No justification existed for Allen Stout and Christopher Wheeler's conduct; and
> >
> > (5) Linda Zabona was damaged as a result.

---

[4] Because the transcript of the Defendants' objection is almost indecipherable, we limit our review to the clearly stated basis that the trial court gave the wrong instruction. The specific objection reads:

> Court's Final Instruction #10 with purports to set forth the cause of action in the elements for torturous, inaudible, contractual relations is defendant's object to the giving of the Instruction further defendant's content as a grounds for their objection that this Instruction does not correctly set forth the elements in particular Item #, Item #1 that a valid enforceable contract exists between this case Plaintiff, Linda Zabona and Defendants Allen Stout and Christopher Wheeler is in fact that is incorrect designation for the, inaudible, contract for that particular Torte. Therefore the Court has given the wrong instruction.

Tr. p. 561.

App. p. 132. At trial, the Defendants objected to this instruction on the basis that it was the "wrong instruction." Tr. p. 561.

In denying the Defendants' motion to correct error, which challenged whether the instruction correctly stated the law, the trial court stated:

> b. The instruction was a correct statement of the law but was not supported by the facts presented and should not have been given as a final instruction.
>
> c. The Plaintiff did not argue this theory to the jury in final argument[.]
>
> d. There is no indication in the record that the jury relied on this instruction causing prejudice to the Defendants.

App. pp. 17-18.

On appeal, Stout argues that reversal is required because Zabona did argue interference with a business relationship in her closing argument as it related to Stout and Wheeler interfering with her relationship with her clients. Stout argues that, because there was a general verdict, it cannot be said that any error in the instruction was cured by the verdict. See Hoffman v. E. W. Bliss Co., 448 N.E.2d 277, 284 (Ind. 1983) ("Our courts have held, despite the erroneous giving of or refusal to give an instruction where the verdict of the jury was correct, there is no cause to reverse the case for a new trial. . . . To determine if the error in the giving of an instruction is cured by the verdict requires an examination of the record and the evidence to see if the verdict could have been predicated on the erroneous instruction.").

We believe Stout oversimplifies the issue. Tortious interference with a business relationship and tortious interference with a contractual relationship are two distinct

9

claims. See, e.g., Melton v. Ousley, 925 N.E.2d 430, 440 n.9 (Ind. Ct. App. 2010). The elements of tortious interference with a contract are: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. Id. at 440. On the other hand, the elements of tortious interference with a business relationship are (1) the existence of a valid business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with the relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with the relationship. Columbus Medical Services Organization, LLC v. Liberty Healthcare Corp., 911 N.E.2d 85, 94 (Ind. Ct. App. 2009). Additionally, this tort requires some independent illegal action. Id.

It is true that the Defendants, as parties to the partnership agreement, could not have committed the tort of interference with a contractual relationship as it relates to Zabona and the partnership agreement. See Trail v. Boys and Girls Clubs of Northwest Indiana, 845 N.E.2d 130, 138 (Ind. 2006) ("A party cannot 'interfere' with its own contracts, so the tort itself can be committed only by a third party."). In that sense Court's Final Instruction No. 10 was the wrong instruction. Nevertheless, "[e]ven when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" Penn Harris Madison School Corp. v.

10

Howard, 861 N.E.2d 1190, 1195 (Ind. 2007) (citation omitted). Contrary to Stout's argument, we do not believe the verdict was predicated on the erroneous instruction.

First, Stout directs us to two brief statements by Zabona during closing arguments that reference interference with a business relationship.[5] However, because the jury was not instructed on the elements of tortious interference with a business relationship, we do not believe it served as basis for the jury's award of damages.[6] Moreover, Stout does not direct us to any argument by Zabona relating to tortious interference with a contractual relationship, and our review of the record reveals no such argument. Thus, we agree with the trial court that Zabona did not argue to the jury that the tort of interference with a contractual relationship was a basis for awarding damages.

Further, Zabona asserted a breach of contract claim, and we believe that the elements described in Court's Final Instruction No. 10 inherently included the elements of a breach of contract claim. See Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc., 953 N.E.2d 1125, 1128-29 (Ind. Ct. App. 2011) ("The elements of a breach of

---

[5] Stout also directs us to a third portion of Zabona's closing argument in which she criticized a letter sent by the Defendants to Zabona's clients after the termination of the partnership agreement. The argument referenced fairness, and suggested that it "wasn't right." Tr. p. 532. This argument did not specifically reference interference with a business relationship.

[6] We acknowledge that in describing the parties' various claims the trial court instructed the jury:

> Linda A. Zabona claims that Allen R. Stout and Christopher J. Wheeler improperly terminated the partnership of Stout, Wheeler & Zabona, LLP in their torturous [sic] interference with Linda A. Zabona's relationships with her clients by providing inaccurate communications and by withholding from Linda A. Zabona access to the records and files of her clients. Linda A. Zabona must prove her claims by the greater weight of the evidence. Allen R. Stout and Christopher J. Wheeler are not required to disprove Linda A. Zabona's claims.

App. p. 125. This instruction, however, does not include the elements of tortious interference with a business relationship.

contract action are the existence of a contract, the defendant's breach thereof, and damages."), trans. denied. Thus, logically, if the jury determined that Zabona proved the elements described in this instruction, Zabona would have also proven her breach of contract claim, providing a basis for the jury's verdict. See Claise v. Bernardi, 413 N.E.2d 609, 612 (Ind. Ct. App. 1980) (explaining that when a third party, acting in bad faith, and with knowledge of a contract, induces a party to the contract to breach it, the non-breaching party has an action for interference against the inducing third party and that "[t]he non-breaching party of course also has an action for breach of contract against the breaching party.").

In sum, under these circumstances, we agree that Court's Final Instruction No. 10 was the wrong instruction. However, the jury was not instructed on the elements of tortious interference with a business relationship, and Zabona did not argue to the jury that she was entitled to recover on the claim of tortious interference with a contractual relationship. Further, we are not convinced that the jury's verdict was based on tortious interference with a contractual relationship instruction as opposed to the breach of contract theory. Accordingly, the error in giving this instruction was harmless. See Penn Harris, 861 N.E.2d at 1195 (concluding that the error in giving the instruction was harmless where the party seeking the new trial did not make a showing that its substantial rights had been adversely affected).

### C. Refusal to Give Defendants' Instruction No. 4 and Instruction No. 5

Stout also argues that the trial court erroneously refused to give the Defendants' Instruction No. 4 and Instruction No. 5. The Defendants' Instruction No. 4 provided, "A

12

party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." App. p. 76. The Defendants' Instruction No. 5 provided:

> If you find Linda A. Zabona:
>
> 1.    Committed a substantial or material breach of the partnership agreement; and
>
> 2.    Her breach occurred before any alleged breach of Allen R. Stout and Christopher J. Wheeler.
>
> Then Linda A. Zabona may not maintain an action against Allen R. Stout and Christopher J. Wheeler or seek to enforce the partnership against them for their subsequent alleged breach.

Id. at 77.

Relying on Court's Final Instruction No. 4, Zabona argues that these instructions were covered by other instructions. Court's Final Instruction No. 4. provides:

> To recover damages from Allen R. Stout and Christopher J. Wheeler, Linda A. Zabona must prove all of the following by the greater weight of the evidence:
>
> 1.    The parties entered into a contract;
>
> 2.    Linda A. Zabona performed her part of the contract;
>
> 3.    Allen R. Stout and Christopher J. Wheeler failed to perform their part of the contract;
>
> 4.    Allen R. Stout and Christopher J. Wheeler's breach of contract damaged Linda A. Zabona;
>
> 5.    That parties reasonably anticipated those damages when they entered into the contract; and

13

> 6. Allen R. Stout and Christopher J. Wheeler's breach of contract was a responsible cause for those damages.

Id. at 126. Stout argues that this instruction "said nothing about the consequences that if Zabona first breached the contract, she forfeited the right to recover under it." Appellant's Reply Br. p. 19.

According to part 2 of Court's Final Instruction No. 4, if Zabona did not perform her obligations under the contract, she would not be entitled to recover. We believe that the instruction's requirement that Zabona performed her part of the contract adequately addressed Stout's concerns.

Even if the trial court did abuse its discretion in declining to give the Defendants' instructions, any error is harmless. Stout's argument is based on the premise that the jury was "not told that the by first breaching the partnership agreement, [Zabona] lost the right to seek relief under it." Appellant's Br. p. 31. The jury, however, specifically found against the Defendants on their counterclaim, which included breach of contract. Therefore, there was no basis to believe that the jury was convinced that Zabona breached the contract, let alone that she was first to materially breach the contract. Any error in the refusal to give these instructions was harmless.

### IV. Damages

Stout argues that the damages award was not supported by the evidence. "A jury determination of damages is entitled to great deference when challenged on appeal." Sears Roebuck and Co. v. Manuilov, 742 N.E.2d 453, 462 (Ind. 2001). As our supreme court has observed:

14

Damages are particularly a jury determination. Appellate courts will not substitute their idea of a proper damage award for that of the jury. Instead, the court will look only to the evidence and inferences therefrom which support the jury's verdict. We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable ground. Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed.

Id. Said another way:

Our inability to actually look into the minds of the jurors is, to a large extent, the reason behind the rule that we will not reverse if the award falls within the bounds of the evidence. We cannot invade the province of the jury to decide the facts and cannot reverse unless the verdict is clearly erroneous.

Id.

Zabona offered evidence that $2,825 in personal property was not returned to her. She presented an itemized list of Firm's personal property and estimated the value of that property at $108,000. She also testified that she had billed out but not received $62,000. She also testified that she had earned $112,000 in 2006 and that the Firm paid her car payment, cell phone bill, 80% of her gas, and health insurance. Zabona argued that the manner in which the partnership was liquidated affected her ability to practice law and testified that after the termination of the partnership she worked for another attorney for $52,000 per year without any benefits. Zabona also testified regarding certain operating expenses that had been prepaid by the Firm.

Stout argues that Zabona was not entitled to 1/3 of the personal property owned by him prior to the creation of the partnership, that Zabona was wrong about the prepaid expenses, that she was not entitled to the full amount of the receivables, that the Firm

15

issued her $9,241.90 in checks after the termination, that she was overpaid $2,210.44, and that the Firm continued to make her car payments for three months. Stout's argument is largely a request to reweigh the evidence, which we cannot do.

As for Stout's claim that he was entitled to retain any personal property owned by him when the partnership was formed, the jury was instructed on the repayment of a partner's contributions and what is considered a partnership asset upon dissolution. The jury was also presented with the partnership agreement, which provided, "Initial Capital. Each partner shall contribute one dollar and other good and valuable consideration deemed satisfactory among the partners." Pl. Ex. 1. To the extent the jury did not believe Zabona's testimony that she acquired a 1/3-interest in the personal property brought into the Firm when they entered into the partnership agreement, we presume the jury followed the instruction.[7] See Travelers Indem. Co. of America v. Jarrells, 927 N.E.2d 374, 378 (Ind. 2010). The jury was also instructed that a person who suffers pecuniary loss as a result of a criminal conversion may recover treble damages. Based on the nature of Zabona's claims and the evidence presented to the jury, we cannot conclude that the damages award was clearly erroneous.

### V. Counterclaim

Stout argues that the jury's verdict on the Defendants' counterclaim is contrary to law. He contends that the standard of review normally employed when there is an adverse verdict on a complaint or counterclaim should not be applied and that, because

---

[7] Stout also argues that Zabona was not entitled to any interest in the real property that he owned and leased to the Firm. It does not appear, however, that Zabona was claiming any interest in real property owned by Stout.

16

Zabona was the managing partner, she occupied a heightened fiduciary relationship with the Defendants. Stout asserts that a burden-shifting approach should have been taken on the Defendants' counterclaim and suggests that Zabona should have been required to prove her innocence.

As an initial matter, there is no indication that the Defendants pursued this burden-shifting theory at trial. In fact, the Defendants' Instruction No. 1, which was given to the jury as part of Court's Final Instruction No. 3, specifically provided in part, "Stout & Wheeler, Allen Stout, Christopher J. Wheeler must prove their claims by the greater weight of the evidence. Linda A Zabona are [sic] not required to disprove Stout & Wheeler, Allen Stout, Christopher J. Wheeler's claims." App. pp. 73, 125. Because a party may not raise an issue for the first time in a motion to correct error or on appeal, Stout's burden of proof argument is waived. See Troxel, 737 N.E.2d at 752.

To the extent this issue is reviewable under what Stout characterizes as the "normal standard of review," it is unavailing. Appellant's Br. p. 31. Because Stout had the burden of proof (or waived any argument to the contrary), he is appealing a negative judgment, and we will not disturb the jury's verdict absent a showing by Stout that the verdict and judgment are contrary to law. See Board of Trustees of Ball State University v. Strain, 771 N.E.2d 78, 84 (Ind. Ct. App. 2002). "A verdict is contrary to law when the evidence is without conflict and leads to a conclusion opposite of that reached by the jury." Id. "We consider only the evidence on the record most favorable to the prevailing party without reweighing the evidence or judging the credibility of the witnesses." McConnell v. Satterfield, 576 N.E.2d 1300, 1302 (Ind. Ct. App. 1991).

17

Stout contends that we should not indulge Zabona's justification for her credit card use on the basis that the other partners did the same thing and that there is conflicting evidence regarding whether Stout and/or Wheeler approved various financial transactions made by Stout. Stout's argument, however, is nothing more than a request to reweigh the evidence, which we cannot do. As such, Stout has not established that the jury's verdict on the Defendants' counterclaim is contrary to law.

**Conclusion**

Stout's arguments regarding public policy and forfeiture are waived. Stout has not established that the manner in which the jury was instructed amounts to reversible error. Stout has not established that the damages award is clearly erroneous. Finally, to the extent Stout's challenge to the jury's verdict on the counterclaim is reviewable, it is unavailing. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.